UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ALONZO C. LEWIS, )
)
    *Plaintiff*, )
) 1:10-CV-249
v. )
) Chief Judge Curtis L. Collier
CITY OF CHATTANOOGA, )
)
    *Defendant*. )

**MEMORANDUM**

Before the Court is Defendant City of Chattanooga's ("Defendant") motion for summary judgment (Court File No. 16). Plaintiff Alonzo C. Lewis ("Plaintiff") filed a response to Defendant's motion for summary judgment (Court File No. 21), and Defendant submitted a reply (Court File No. 22). For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 16).

**I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Background**

Plaintiff Alonzo C. Lewis worked for Defendant City of Chattanooga from February 18, 2004, until his termination on December 3, 2008 (Court File No. 16-4 ("Leach Aff."), ¶ 2; Court File No. 21-1 ("Lewis Dep."), p. 9). At the time Plaintiff was terminated, he was working as an Equipment Operator 3 in the Brush and Trash Collection Section of City Wide Services, a division of Public Works (Leach Aff. ¶ 2; Lewis Dep., p. 8). Plaintiff asserts he had worked in this position for approximately two and a half years (Lewis Dep., p. 9). Plaintiff's position required that he maintain a Commercial Driver's License ("CDL"), and as a CDL-holder, Plaintiff was required to

participate in random drug testing pursuant to federal law and regulations (*id.*, p. 20).

Defendant maintains a "zero tolerance" alcohol and drug policy, which mandates the termination of any employee who uses a controlled substance or illegal drug on or off duty (Court File No. 16-4 ("Alcohol and Drug Policy"), p. 15; Lewis Dep., pp. 18-19). On November 20, 2008, Plaintiff was randomly selected to participate in a drug screen with Defendant's third-party medical provider, CareHere (Leach Aff. ¶ 6). Because his urine test came back diluted, Plaintiff had to return for a second test the next day (Leach Aff. ¶ 6; Lewis Dep., pp. 9-11). Plaintiff's second test was a hair drug screen, and he tested positive for the presence of marijuana (Court File No. 16-4 ("Hair Drug Test Results"), p. 13; Leach Aff. ¶ 8; Lewis Dep., p. 13). On December 2, 2008, Plaintiff had a hearing with Jim Templeton, Director of City Wide Services, to discuss the failed drug test (Leach Aff. ¶ 21; Lewis Dep., p. 21). On December 3, 2008, Plaintiff was terminated from employment, and Defendant's reason was that Plaintiff took part in a "reasonable suspicion drug screen and tested positive for [an] illegal substance" (Leach Aff. ¶ 13; Lewis Dep., p. 8; Court File No. 16-4 ("Dismissal Memo"), p. 17). Plaintiff subsequently appealed his termination before the Chattanooga City Council where he had an opportunity to speak, present evidence, and bring forth witnesses (Lewis Dep., p. 21). The City Council upheld Defendant's decision to terminate Plaintiff (*id.*, p. 21).

After being terminated, an individual can reapply or seek reinstatement as an employee with the City of Chattanooga (Kelley Dep., p. 44; Leach Aff. ¶ 21; Court File No. 21-8 ("Executive Order")). If a person seeks to reapply, there must be a vacant position and the person must submit either an online or paper application (Kelley Dep., pp. 20-22). An individual cannot be rehired without going through this process (*id.*, p. 25). In contrast, reinstatement does not require an application and the decision is generally made at the department administrator's discretion (*id.*, pp.

45, 47).

Plaintiff argues he had never seen Defendant's reinstatement policy (Lewis Dep., p. 22). Moreover, he asserts that Donna Kelley, the administrator of personnel, stated there was a six-month waiting period to reapply during Plaintiff's City Council hearing (*id.*, p. 25). Ms. Kelley denies ever making such a statement (Kelley Dep., p. 34; Court File No. 16-2 ("Hearing Transcript")). Plaintiff also asserts Wayne Brady, a former City of Chattanooga employee and one of Plaintiff's witnesses at the hearing, claimed he had been told about a six-month waiting period when he was terminated (Lewis Dep., pp. 25, 27). Plaintiff admits he could not find this waiting period requirement in any of Defendant's written policies (*id.*, p. 25).

The parties dispute whether any other requirements for reemployment exist. Plaintiff presents testimony from Ms. Kelley, stating "[a]n individual reapplies and then their future employment is based on merit and fitness as they set forth in their application file" (Kelley Dep., p. 33). Further, Ms. Kelley testified that an individual terminated for alcohol or drug abuse does not have to complete treatment or counseling to be rehired (*id.*, p. 33). Defendant, however, claims its reemployment and reinstatement policy requires any former employee seeking rehiring or reinstatement to complete a recognized course of alcohol and drug treatment first (Leach Aff. ¶ 22).

Plaintiff compares his circumstances to that of another City of Chattanooga employee, Steve Pack. Plaintiff is an African-American male; Mr. Pack is a white male (Court File No. 1, ¶¶ 11-13, 18). Mr. Pack worked as an Equipment Mechanic 3 in the Traffic Operations Division of Public Works at the time of his termination (Leach Aff. ¶ 17; Court File No. 21-6, p. 2). As a CDL-operator, Mr. Pack, was randomly selected to participate in a drug screen on November 20, 2008 (Leach Aff. ¶ 18). His drug screen came back diluted, and he was directed to return for a hair screen

(*id.* ¶ 19). However, Mr. Pack refused to submit to the second drug test, and on December 2, 2008, he was terminated for violating Defendant's drug testing policy (*id.* ¶¶ 19-20; Court File No. 21-6, p. 2).

Mr. Pack completed a course on Alcohol and Drug rehabilitation on December 19, 2008 (Leach Aff. ¶ 23). He then made a request orally for reinstatement and Mr. Leach reinstated him as of January 15, 2009 (*id.* ¶ 24). Defendant asserts its reinstatement of Mr. Pack was not based on race (*id.* ¶ 28; Kelley Dep., p. 44). Rather, Defendant claims Pack was reinstated "based on his exemplary work record, his completion of a rehabilitation program, and the availability of a position" (Leach Aff. ¶ 25; Court File 16-4, p. 65). Defendant asserts Pack had not had any major disciplinary issues prior to the drug test incident (Leach Aff. ¶ 26). Pack had been selected as Public Works Employee of the Year in 2007 out of 600 employees, and "made significant contributions to the City, including the development of a specialized tool for installing traffic signs, which resulted in a savings to the City of over $200,000" (*id.* ¶¶ 26-27).

Moreover, according to Defendant, five other individuals besides Mr. Pack have been terminated for violating the alcohol and drug policy and rehired or reinstated since 2003 (Leach Aff. ¶¶ 32-37). Three of those individuals were African American. All of the employees had completed a recognized alcohol or drug treatment program prior to being rehired or reinstated. All of them had either minor or no disciplinary problems. Finally, all of them were hired within less than six months of their termination.

Plaintiff and Defendant disagree over Plaintiff's disciplinary record. Defendant asserts Plaintiff received twelve reprimands for various offenses between March 2005 and the date of his termination (Leach Aff. ¶ 16). Defendant also notes Plaintiff received many of those reprimands in

4

2008, such as not following instructions five times, being tardy for work nine times, and having thirty-three hours of unexcused absences. Of those alleged incidents, Plaintiff only remembers being reprimanded on August 1, 2008, for being late to work on nine occasions, and being reprimanded on October 2, 2008, for not following instructions on at least one occasion (Lewis Dep., pp. 34-35).

Plaintiff avers he has submitted applications through Defendant's website since being terminated, including an application for an equipment driving job at Moccasin Bend (*id.*, pp. 23-24, 29). Although he does not remember the dates when he applied, he claims he noted on the application that he was a former employee of Defendant (*id.*, p. 24). However, Defendant claims it has no record of either an online or paper application submitted by Plaintiff (Court File No. 16-5 ("Doug Kelley Aff.") ¶¶ 5-6; Court File No. 16-5, pp. 3-6).

Finally, as evidence of Defendant's discriminatory motive, Plaintiff alleges, "I was told by Snyder, that after the Ronald Madden case and Ronald Madden won that I would be hung next, by Ronald Madden" (Lewis Dep., p. 38). According to Plaintiff, Ronald Madden was a former employee of the city who successfully sued for discrimination, and Art Snyder was a supervisor in the construction department. However, Plaintiff admits Mr. Snyder was not his supervisor (*id.*, pp. 38-39), nor does he ever assert Mr. Snyder played any role in his firing or hiring.

B.     **Procedural Background**

On September 2, 2010, Plaintiff brought suit against the City of Chattanooga alleging race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Plaintiff seeks compensatory damages, including front pay, back pay, and "lost benefits." Plaintiff also seeks "an Order directing the defendant to evaluate and neutralize their policies, practices, and procedures towards minorities, in particular, African-Americans, and for such reasonable time so

5

as to allow the defendant to undertake and complete such corrective procedures" (Court File No. 1, pp. 3-4). On August 5, 2011, Defendant moved for summary judgment (Court File No. 16).

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains

sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.    DISCUSSION**

Plaintiff alleges he was unlawfully discriminated against on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. In particular, Plaintiff, a black male, avers he was terminated by Defendant, and Defendant refused to rehire him. Yet, Plaintiff alleges a similarly situated white male was rehired. A plaintiff "may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted). "The direct evidence and circumstantial evidence paths are mutually exclusive; the plaintiff can meet [his] burden with either method of proof." *Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000). Either way, a "[p]laintiff's burden with respect to establishing a prima facie case is not onerous." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984) (citation omitted).

Where, as here, Plaintiff does not allege any direct evidence of discrimination exists, a circumstantial racial discrimination claim is evaluated using the familiar burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, the

7

plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). A plaintiff can establish a prima facie case of race discrimination by showing (1) he belongs to a protected class; (2) he applied for, but did not receive, a job; (3) he was qualified for the job; and (4) a similarly-situated person outside of the plaintiff's protected class did receive the job. *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003) (citing *Thurman v. Yellow Freight Sys.*, Inc., 90 F.3d 1160, 1166 (6th Cir. 1996)).

Once Plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory explanation for its actions. *Id.* (citing *Burdine*, 450 U.S. at 253). Finally, the burden shifts back to the plaintiff to demonstrate the employer's explanation was pretext. *McDonnell Douglas*, 411 U.S. at 802-04, 807. Throughout this burden shifting, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *DiCarlo v. Potter*, 358 F.3d 408, 414-15 (6th Cir. 2004). The plaintiff cannot rely purely on "mere personal belief, conjecture and speculation" as they are insufficient to support an inference of discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).

Because Defendant concedes Plaintiff has established the first and third elements of his prima facie case under Title VII--that is, Plaintiff is a black male and was qualified for the position-- the Court will focus on the remaining elements of Plaintiff's prima facie case. With regard to the second element, Plaintiff has the burden of showing "he applied and was qualified for a job for which the employer was seeking applicants . . . [and] that, despite his qualifications, he was

8

rejected." *See Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802).

Here, Defendant contends Plaintiff never reapplied for, and therefore Defendant never rejected Plaintiff from, a job position (Leach Aff. ¶¶ 29-31). As evidentiary support, Defendant offers copies of personnel records that appear to show Plaintiff has not submitted any paper or online applications since his termination (Doug Kelley Aff. ¶¶ 5-6; Court File No. 16-5, pp. 3-6). However, Plaintiff asserts that, although he cannot remember the exact dates, he applied online for jobs with Defendant, including a position as an equipment operator at Moccasin Bend (Lewis Dep., pp. 23-24, 29).

Defendant, as the moving party, does not have to disprove the nonmoving party's claim; instead it need only "'show[]'--that is, point[] out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Westgate Vill. Shopping Ctr. v. Lion Dry Goods Co.*, 21 F.3d 429 (6th Cir. 1994) (quoting *Celotex Corp.*, 477 U.S. at 325). The plaintiff must offer more than a mere "scintilla of evidence" to support his position, and he must offer "evidence on which the jury could reasonably find for the plaintiff." *Id.* (citing *Anderson*, 477 U.S. at 252). At the same time, the district court must be careful to leave all determinations of credibility for the jury and remember "all *justifiable* inferences are to be drawn in [the non-moving party's] favor." *Anderson*, 477 U.S. at 255 (emphasis added).

Plaintiff has failed to offer sufficient evidence upon which a jury could reasonably find in his favor with regard to the second element of his prima facie case. Although Plaintiff asserts he submitted online applications, Plaintiff cannot remember the dates he applied, nor can he remember which positions he applied for, except for a job as an equipment operator at Moccasin Bend.

9

Case 1:10-cv-00249   Document 24   Filed 11/01/11   Page 9 of 16   PageID #: 305

Viewing the evidence in the light most favorable to Plaintiff, even if he submitted that application, Plaintiff has failed to present any evidentiary support for his claim that his application was rejected by Defendant. He presents no evidence to show the position he applied for was subsequently filled, or that Defendant reviewed his application, considered his qualifications, and then rejected him from that position. He provides no evidence of communication with Defendant with regard to the position or the alleged rejection. Finally, Defendant has put forth evidence to show that Plaintiff's application was not rejected because, even if he believed he submitted it, Defendant had no record of Plaintiff's application in its database. As a result, none of Defendant's staff reviewed Plaintiff's application. Taken as a whole, the Court finds it cannot draw a "justifiable inference" in Plaintiff's favor based on the evidence before it. Accordingly, Plaintiff has failed to meets his burden on the second element of the prima facie case.

Nonetheless, even if the Court found Plaintiff had provided sufficient evidence regarding the second element, Plaintiff would still have to show he was "rejected in favor of another person with similar qualifications who was not a member of [the] protected class." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996). In *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992), the Sixth Circuit held that to be considered "similarly situated" in the termination context:

> the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same supervisor, have been subject to the same standards and have been engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

However, the Sixth Circuit has since clarified that the comparison of similarly situated individuals does not have to be exact; rather, the plaintiff and the person to whom he is comparing himself to

10

should be similar "in all of the *relevant* aspects." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Here, Plaintiff asserts he is similarly situated to Steve Pack, a white male. Defendant concedes both individuals were former employees of Defendant terminated by Steve Leach for violating the City of Chattanooga's drug testing policy (Court File No. 21-6, p. 2; Court File No. 21-7, p. 1). Plaintiff was terminated on December 3, 2008, and Mr. Pack was terminated on December 2, 2008 (*id.*). However, when previously employed with Defendant, the two held different positions and worked in different divisions. Plaintiff was an equipment operator in the Brush and Trash Collection Section, with an annual salary of $27,227.00. Mr. Pack was an Equipment Mechanic 3 in Traffic Operations, with an annual salary of $42,265.60 (*id.*). Moreover, Mr. Pack was reinstated back to his position as an equipment mechanic on January 15, 2009, a position Plaintiff never claims he applied for.

Finally, the disciplinary and performance backgrounds of Plaintiff and Mr. Pack are not "comparable." Although the parties disagree on the degree of Plaintiff's disciplinary problems prior to the drug tests leading to his termination, it is undisputed that Plaintiff was reprimanded on August 1, 2008, for being late to work on nine occasions, and on October 2, 2008, for not following instructions on at least one occasion (Lewis Dep., pp. 34-35). In contrast, Defendant asserts Mr. Pack did not have any significant disciplinary issues prior to the drug tests leading to his termination (Leach Aff. ¶ 26), and, in fact, had been selected as Public Works Employee of the Year in 2007 in addition to making other significant contributions to the City of Chattanooga in his position (*id.* ¶¶ 26-27).

11

Although Plaintiff and Mr. Pack were both terminated for violating the drug policy, and they both presumably reapplied or sought reinstatement, Plaintiff has failed to establish he was similarly situated with Mr. Pack in any other relevant respects, such as that he applied for any of the same positions, or he applied to work in any similar divisions, or he possessed the same or better qualifications for the position Mr. Pack received. Thus, the Court finds Plaintiff has failed to provide sufficient evidence to meet the fourth element of his prima facie case.

Although Plaintiff's failure to meet any element of his prima facie case should end the Court's analysis, the Court will proceed to consider the remaining parts of the *McDonnell Douglas* analysis to demonstrate that, even if Plaintiff had established his prima facie case, Defendant would still be entitled to summary judgment as a matter of law. Defendant has met its burden of production by "clearly set[ting] forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 96 (6th Cir. 1982) (quoting *Burdine*, 450 U.S. at 255). Assuming Plaintiff had established he applied and was rejected from a position with Defendant,[1] Defendant asserts Plaintiff's rejection was still not motivated by any racial considerations. Defendant argues it would have had grounds to reject Plaintiff's application in light of his disciplinary history while previously working for the City of Chattanooga (Leach Aff. ¶¶ 26-27, 31). Defendant presents evidence showing, at a minimum, Plaintiff was reprimanded on August 1, 2008, for being late to work on nine occasions, and was reprimanded on October 2, 2008, for not following instructions on at least one occasion (Lewis Dep., pp. 34-35). All of these events were prior to Plaintiff's violation of the alcohol and drug policy that led to his termination. In contrast,

---

[1] As noted earlier, Defendant maintains it never rejected Plaintiff's application, because it had no record Plaintiff ever submitted an application or asked to be reinstated (Leach Aff. ¶¶ 29-31; Doug Kelley Aff. ¶¶ 5-7).

Defendant asserts Mr. Pack did not have any significant disciplinary issues prior to his violation of the alcohol and drug policy.

Moreover, among other considerations, Defendant asserts Mr. Pack was reinstated because of his "exemplary work record" and his "completion of a rehabilitation program" (Leach Aff. ¶ 25; Court File 16-4, p. 65). As noted before, Mr. Pack had been selected as Public Works Employee of the Year in 2007 out of 600 employees, and "made significant contributions to the City, including the development of a specialized tool for installing traffic signs, which resulted in a savings to the City of over $200,000" (Leach Aff. ¶¶ 26-27). Mr. Pack had also completed an alcohol and drug rehabilitation course. The Court finds Defendant's explanation clearly sets forth the reason for Plaintiff's rejection, and therefore, Defendant has met its burden of production and rebutted Plaintiff's prima facia case.

Next, Plaintiff must show Defendant's reason for rejecting Plaintiff was pretext for its real intent to discriminate against Plaintiff on the basis of race. *See McDonnell Douglas*, 411 U.S. at 802-04, 807. The nonmoving party can establish pretext "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 392 (6th Cir. 2008) (quoting *Burdine,* 450 U.S. at 256). "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Id.* at 393 (citation omitted). However, it can also be shown "by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its

actual motivation.'" *Id.* (citation omitted).

Even viewing the facts in the light most favorable to Plaintiff, Plaintiff fails to establish Defendant's proffered reasons were merely pretextual. Plaintiff does not attempt to dispute the differences between his prior work record and Mr. Pack's prior record that may have led Defendant to hire Mr. Pack and not Plaintiff. Thus, he is not arguing Defendant's decision had no basis in fact.

Rather, the Court construes Plaintiff's argument to be Defendant's proffered reasons were not its "actual reason[s]" or are "insufficient to explain the employer's action[s]." White, 533 F.3d at 393. Plaintiff argues Defendant provided him with insufficient or inaccurate information regarding the rehiring process that prevented him from being rehired. For example, Plaintiff argues Donna Kelley did not explain the difference between "reinstatement" and "reapplication" to Plaintiff and argues Ms. Kelley falsely told Plaintiff that he would have to wait six months to reapply. Also, Plaintiff asserts Ms. Kelley told him there were no additional requirements to reapply and made no mention of any alcohol or drug treatment requirement.

Viewing the evidence in the light most favorable to Plaintiff, even if Ms. Kelley failed to provide complete or fully accurate information to Plaintiff, Plaintiff has presented no evidence to show her actions or Defendant's were racially motivated. A plaintiff's "conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 113 (6th Cir. 2009) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)). Here, the Plaintiff has done nothing more than make a blanket assertion that because Mr. Pack, a white male, was rehired or reinstated and it occurred in less than six months, Defendant must have targeted Plaintiff with misinformation on the basis of his race. Yet Defendant has already established that Mr. Pack is not the only employee who

has been rehired or reinstated after being terminated for violating the alcohol and drug policy. Of the five other individuals who have also been rehired or reinstated since 2003, three were African American. All of them were rehired or reinstated within less than six months of being terminated. All of them had minor or no disciplinary problems. Finally, all of them had completed a recognized alcohol and drug treatment program. Thus, even if Plaintiff received misinformation, he has not established it was because Defendant had a hidden motive to discriminate against him on the basis of his race.

Finally, the Court rejects any argument by Plaintiff that the statement purportedly made by Art Snyder is evidence of Defendant's discriminatory motive to not rehire Plaintiff. Plaintiff alleges, "I was told by Snyder, that after the Ronald Madden case and Ronald Madden won that I would be hung next, by Ronald Madden" (Lewis Dep., p. 38). Plaintiff interprets Mr. Snyder's statement as evidence that Defendant intended to terminate him because of his race following its loss of a discrimination case involving Mr. Madden. Potential hearsay issues aside, the Court finds Mr. Snyder's statement to be no more than a "rumor" or "subjective belief" by Mr. Snyder, which is not enough to establish a discrimination claim as a matter of law. *See Mitchell*, 964 F.2d at 585. This isolated statement made prior to Plaintiff's termination by an individual not alleged to have been a decisionmaker in Plaintiff's firing or rehiring is wholly insufficient to suggest Defendant intentionally discriminated against Plaintiff in its refusal to rehire.

Defendant has proffered a legitimate, nondiscriminatory reason for not rehiring Plaintiff--that is, Plaintiff's prior disciplinary record. To this argument, Plaintiff has failed to present any significant probative evidence to establish there is any genuine issue of material fact as to Defendant's failure to rehire. Therefore, even if Plaintiff had established his prima facie case, no

15

reasonable jury could conclude Defendant's proffered reason was pretextual. Accordingly, the Court finds Defendant is entitled to summary judgment as a matter of law.

## IV. CONCLUSION

In light of the parties' arguments and the evidence on the record, as well as the reasons stated above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 16).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**